E-FILED
Friday, 02 November, 2007  03:10:12 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| A.G. EDWARDS & SONS, INC., a Delaware Corporation,<br><br>                    Plaintiff,<br>        v.<br><br>RICHARD MARCOLLA, DANIEL BARRY, THOMAS CUTRONE, KRISTA SAVAGE, JOYCE GLANZMAN, KAREN LOESCHEN, WILLIAM (RAMSAY) EASTERLING and GENE HARSHMAN, individuals,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 07–3260<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' PREHEARING MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION**

A.G. Edwards & Sons' ("Edwards") disappointment about the loss of Defendants as employees is understandable. The facts and law, however, do not support Edwards' misguided effort to restrain Defendants for the following reasons:

1. Edwards is party to a forbearance agreement and is prohibited from seeking injunctive relief against the Defendants;

2. Edwards' arguments that the forbearance agreement doesn't apply are without merit;

3. Even if the forbearance agreement does not apply, Edwards is not entitled to the injunctive relief it seeks because its own employment agreements with Defendants are devoid of any applicable non-solicitation restrictions; and

4. Edwards cannot otherwise meet the standard for injunctive relief.

1418511.01

I. **BACKGROUND**

Defendants were employed as registered representatives by Edwards in its Quincy, Illinois office until September 21, 2007 when they accepted employment with Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"). Edwards and Merrill Lynch are parties to a legally binding forbearance agreement called the Protocol for Broker Recruiting ("Protocol"), attached as Exhibit "A."

The Protocol is the product of many years of court and arbitration proceedings involving the movement of financial consultants from one firm to another within the securities industry. When experienced financial consultants left one securities firm to join a competitor and attempted to encourage their clients to come with them, firms often would seek both injunctive relief and monetary damages. Such proceedings became extremely expensive and time-consuming for many securities firms, including Edwards and Merrill Lynch.

Cognizant of the time and expense that was being incurred in such litigation and arbitration proceedings, and mindful of the rights of clients who wished to make their own decisions regarding their investment decisions, numerous firms within the securities industry joined the Protocol thereby agreeing to <u>forebear</u> from bringing injunctive or arbitration proceedings involving broker departures.

Pursuant to the terms of the Protocol, registered representatives are <u>expressly permitted</u> to take client information and use that information to solicit the clients:

> When [registered representatives ("RRs")] move from one firm to another and both firms are signatories to this protocol, they may take only the following account information client name, address, phone number, email address, and account title of the clients that they serviced

>while at the firm ("the Client Information") and are prohibited from taking any other documents or information.

Indeed, the protection that the Protocol provides is never automatically lost even when a broker takes more than the Client Information, so long as there is "substantial compliance" with the Protocol requirements:

>. . . the RR will nonetheless be deemed in compliance with this protocol so long as the RR exercised good faith in assembling the list and <u>substantially complied</u> with the requirement that only Client Information related to clients he or she serviced while at the firm be taken with him or her. (emphasis added).

When there is substantial compliance, the former employees are permitted to solicit their clients without any monetary or other liability to their former employer:

>If departing RRs and their new firm follow this protocol, <u>neither the departing RR nor the firm that he or she joins would have any monetary or other liability</u> to the firm that the RR left by reason of the RR taking the information identified below or the solicitation of the clients serviced by the RR at his or her prior firm . . .

If a Protocol-signatory firm believes that its office has been raided, it may bring an action against the new firm for raiding, but has no right under the Protocol to seek injunctive relief against the former employees:

>. . . this protocol does not bar or otherwise affect the ability of the prior firm to bring an action against the new firm for 'raiding.'

## II. LEGAL ARGUMENT

Edwards must satisfy four elements in order to obtain a preliminary injunction: 1) the probability of success on the merits; 2) the threat of irreparable harm; 3) the threatened harm compared to any injuries that would be inflicted by the imposition of injunctive relief; and 4) the public interest. Ferrell v. U.S. Dep't of Housing & Urban Dev., 186 F.3d 805, 811 (7th Cir. 1999).

### A. Edwards Cannot Demonstrate a Likelihood of Success on the Merits Because Edwards is Prohibited By the Protocol From Obtaining Injunctive Relief Against the Defendants.

By signing the Protocol, Edwards indicated its agreement and acceptance of the Protocol terms. Under the terms of the Protocol, registered representatives (like Defendants) are <u>expressly permitted</u> to take client information and use that information to solicit the clients. Defendants are protected from being sued and enjoined.

#### 1. Defendants Substantially Complied with the Protocol.

The express language of the Protocol sets forth the standard by which the Court should measure Defendants' conduct. Specifically, Defendants are entitled to a "free pass" on litigation when they "substantially comply" with the Protocol:

> ... [T]he RR will nonetheless be deemed in compliance with this protocol so long as the RR exercised good faith in assembling the list and <u>substantially complied</u> with the requirement that only Client Information related to clients he or she serviced while at the firm be taken with him or her.
>
> \* \* \*
>
> RRs that comply with this protocol would be free to solicit customers that they serviced while at their former firms but only after they have joined their new firms.

Protocol at pps. 1-2 (emphasis added). Courts have denied a Protocol firm's request for injunctive relief where the former employees have "substantially complied" with the Protocol. See, Merrill Lynch, Pierce, Fenner & Smith v. Reidy, C.A. No. 3:07cv246 (D. Conn. 2007) *Ruling on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction* attached hereto as Exhibit "B." (court denied TRO on basis that Defendants "substantially complied" with Protocol).

Here, there is no question that Defendants substantially complied with the Protocol. Defendants did not solicit any customers prior to their resignations from Edwards, nor did they deliver any customer information to Merrill Lynch in advance of their hires.[1] There is no evidence that Defendants solicited customers serviced by other Edwards' financial consultants. Six (6) Defendants (Marcolla, Savage, Glanzman, Loeschen, Easterling and Harshman ) were in <u>total</u> <u>compliance</u> with the Protocol by taking nothing more than the customer name, address, telephone number, e-mail and account type information. The remaining two (2) Defendants (Barry and Cutrone) substantially complied with the Protocol.[2]

    2.    **Allegations of Raid Do Not Give Edwards an Ability to Seek Injunctive Relief Against Defendants.**

Edwards argues that non-party Merrill Lynch raided its Quincy office and urges this Court to find that, as a result, all bets are off and the Protocol falls by the wayside. Such an argument contradicts the express terms of the Protocol.

---

[1] It is not a violation of the Protocol for a registered representative to give the hiring firm information about that registered representative's business so long as that information does not reveal client identity.

[2] Dan Barry inadvertently retained a scant amount of client information pertaining to three clients, information that he did not use and has already returned to Edwards. Any customer information that Thomas Cutrone had was also returned to Edwards. Neither of these two Defendants has had access to this information since October 9, 2007.

If a Protocol-signatory firm such as Edwards believes that its office has been raided, it is not without recourse. It may bring an action against the new firm (here, Merrill Lynch) for raiding. But, that's it. It does not have the ability to then cast aside the Protocol and seek to enjoin otherwise "substantially compliant" former employees:

> If departing RRs [registered representatives] and their new firm follow this protocol, neither the departing RR nor the firm that he or she joins would have any monetary or other liability to the firm that the RR left by reason of the RR taking the information identified below or the solicitation of the clients serviced by the RR at his or her prior firm, provided, however that **this protocol does not bar or otherwise affect the ability of the prior firm to bring an action against the new firm for 'raiding.'** The signatories to this protocol agree to implement and adhere to it in good faith (emphasis added).

The Protocol plainly states that the remedy for an alleged raid is a <u>separate action against the new firm</u> – that is, a claim for money damages in arbitration. This is not news to Edwards. In fact, Edwards currently has an arbitration action pending against Merrill Lynch seeking damages for its alleged raid of the Quincy office.[3] In that action, Edwards cites to numerous arbitration awards where damages were awarded to the raided firm, <u>not injunctive relief</u>.[4]

Defendants' research has not revealed any cases where federal courts looked at whether a "raid" occurred in the context of a preliminary injunction hearing and suggest

---

[3] <u>A.G. Edwards & Sons, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., Richard Marcolla, Daniel Barry, Thomas Cutrone, Krista Savage, Joyce Glanzman, Karen Loeschen, William (Ramsay) Easterling and Gene Harshman</u>, FINRA No. 07-02742, attached hereto as Exhibit "C."

[4] See e.g., <u>Miller Johnson Steichen Kinnard, Inc. v. Northland Sec., Inc.</u>, NASD No. 02-06736 (Sept. 15, 2004), confirmed by No. MC-04-014441, 2005 WL 1953199 (Minn. Dist. Ct. Jan. 27, 2005) (denying injunctive relief and instead awarding damages for raid); <u>Duncan-Williams, Inc. v. Coastal Sec., L.P.</u>, NASD No. 02-01704 (Aug. 1, 2003) (denying requests for temporary and permanent injunctive relief and awarding damages on raid claim); <u>John G. Kinnard & Co., Inc. v. Dain Rauscher, Inc.</u>, NASD No. 98-00854 (Dec. 10, 1999) (denying request for permanent injunctive relief and awarding damages on raid claim); <u>Smith Barney Shearson, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, NASD No. 95-01340 (Oct. 10, 1995) (denying claims for injunctive relief and awarding damages for raid).

that the dearth of case law is precisely because such a claim must be pursued in arbitration. See e.g. IDS Life Insurance Company and American Express Financial Advisors, Inc. v. Royal Alliance Associates, Inc., 266 F.3d 645 (7th Cir. 2001) (court proceedings stayed while the parties arbitrated their "raiding" claims).

Such "raiding" claims are properly a matter of arbitration and Defendants respectfully submit that the only issue before this Court at this preliminary injunction hearing should be whether there has been any violation of the Protocol by any of the Defendants. If the Court finds any violation of the Protocol by any particular Defendant then the Court should only require that Defendants comply with the Protocol. See A.G. Edwards v. Mccreanor, Coen, Macko and Stollmeyer, Case No. 2:07-CV-570-JES-DNF (M.D. Fla. 2007) (denying Edwards' requested injunctive relief, except for Order to comply with the Broker protocol and refrain from destruction of documents); A.G. Edwards v. Fowler and Fowler, Case No. H-07-3163 (S.D. Tx. 2007) (denying TRO despite allegations that MSDW has conducted nationwide "raids" of Edwards offices). Any other issues or disputes, specifically including any claim of "raiding against the 'new firm,'" should be decided in the arbitration forum pursuant to the Statement of Claim already filed with FINRA by Edwards.

      3.      **Edwards is Not Likely to Succeed on its Breach of Contract Claims Because the Defendants Do Not Have Agreements with Enforceable Restrictive Covenants**

Edwards is unlikely to succeed on its claims for breach of contract. The Protocol governs this dispute and permits the Defendants to solicit the Edwards customers whose accounts they serviced while in the employ of Edwards. Therefore, there has been no breach of contract.

Even in the absence of the Protocol, only two of the Defendants (Easterling and Loeschen) are even subject to contracts containing non-solicitation provisions. The other six Defendants either never signed agreements containing non-solicitation provisions, their non-solicitation provisions have expired, or there is no evidence that they violated their provisions. Accordingly, Plaintiff cannot demonstrate a likelihood of success on its breach of contract claims.

### 4. **Edwards is Not Likely to Succeed on Its Breach of Fiduciary Duty or Duty of Loyalty Claims.**

Edwards will not be able to show that any of the Defendants solicited the business of any of their customers before they resigned. The evidence will further show that the Defendants did not "destroy" or "leave completely empty" the Edwards office in Quincy, Illinois upon their resignations, but rather endeavored in good faith to take only that information permitted by the Protocol. There can be no question that Defendants were allowed to resign from Edwards, and they were permitted to join a competitor. Therefore, there is no evidence of breach of fiduciary duty or breach of the duty of loyalty.

### 5. **Edwards is Not Likely to Succeed on a Misappropriation Claim Because Any Alleged Non-Protocol Information Has Been Returned.**

With respect to the small amount of non-Protocol information and documents retained by two of the Defendants, this information <u>has already been returned to Edwards</u> and has not been used by the brokers in their solicitation of customers. Accordingly, there is nothing for the Court to enjoin.

As Edwards cannot show a likelihood of success on the merits of any of its claims, injunctive relief is inappropriate.

### B. Edwards Cannot Establish Irreparable Harm

In addition to the improbability of succeeding on the merits, Edwards is not entitled to a preliminary injunction because no threat of irreparable harm exists. Under long-standing precedent, no irreparable harm will be found where money damages are calculable. See American Hospital Assoc. v. Harris, 625 F.2d 1328, 1331 (7th Cir. 1980) (threatened injuries must be "peculiar" and not-susceptible to post-determination remedy in order to constitute irreparable harm, and "[m]ere injuries, however substantial, in terms of money, time and energy…are not enough."); Bartlett & Co., Grain v. Union P. R. Co., 528 F. Supp. 1234, 1243 (W.D. Mo. 1981) ("monetary loss that is compensable by money damages [did] not constitute irreparable harm."). See also Paul v. Pulitzer Publ. Co., 1974 U.S. Dist. LEXIS 8362 (E.D. Mo. 1974) ("where the loss, as in this case, may be ascertained in money damages, no irreparable injury is shown and refusal to grant a preliminary injunction is proper."); Fischer v. Brombolich, 566 N.E.2d 785, 793 (Ill. App. 1991)) ("irreparable harm occurs only where monetary damages cannot adequately compensate the injury or where the injury cannot be measured by pecuniary standards."); Sampson v. Murray, 415 U.S. 61, 90 (1974) (confirming that "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury").

Courts across the country have confronted this issue, and recognized that financial services firms do not suffer irreparable injury when an employee resigns to work for the competition. See Morgan Stanley DW, Inc. v. Frisby, 163 F. Supp.2d 1371, 1376 (N.D. Ga. 2001) (no irreparable harm, because careful monitoring of all financial transactions in the securities industry made any conceivable loss arising from the departure of a financial

advisor "calculable."). See also, Merrill Lynch v. de Liniere, 572 F. Supp. 246, 249 (N.D. Ga. 1983) (threat of irreparable harm to "business momentum" unrealistic in securities industry, and loss of commissions could "be readily calculated" from commissions derived from customers by new firm); Prudential Sec., Inc. v. Plunkett, 8 F. Supp. 2d 514, 519 (E.D. Va. 1998) (brokerage firm's "alleged losses can be quantified, and [the financial services firm] can be substantially compensated with monetary damages for those losses"); Merrill Lynch, Pierce Fenner & Smith, Inc. v. Callahan, 265 F. Supp.2d 440 (D. Vt. 2003) (no irreparable harm because financial costs were compensable through money damages); American Express Financial Advisors, Inc. v. Temm, 241 F.Supp.2d 30 (D. Maine 2003) (no irreparable harm because any damages caused by loss of customers could be calculated from customer account records and expert testimony); Securities v. Bell, 758 So.2d 1229 (Fla. 4th DCA 2000) (industry-mandated record keeping at financial advisor's new employer could prove actual damages and foreclosed possibility of injunctive relief).

As the above decisions illustrate, the only possible injury to Edwards in this case would be a loss of revenue from clients who choose to follow their financial advisors to Merrill Lynch. Since every client who transfers his or her account to the Defendants at Merrill Lynch will be documented, and every dollar earned from these accounts recorded, any potential damages are readily calculable. For that reason alone, Edwards' request for a preliminary injunction must be denied.

## C. The Harm That Would be Inflicted upon the Brokers by an Injunction Far Outweighs any Potential Injury to Edwards

Not surprisingly, courts have recognized that brokerage firms can survive the denial of an injunction far more readily than their departing employees could survive its issuance. See Frisby, 163 F. Supp.2d at 1381 ("As have others, this Court holds that the balance of the equities clearly tips in favor of Defendants and their customers. Brokerage firms can survive the denial of an injunction far more readily than their departing employees can survive its issuance."); de Liniere, 572 F. Supp. at 249 ("Because the effect of the loss of income pending the outcome of this dispute would, by reason of the differing financial strength of a large brokerage firm and an individual broker, bear far more heavily on Ms. de Liniere than on Merrill Lynch, that disparity of effect supports denial of an injunction.").

If the application for an injunction is denied, Edwards may still compete, through its other brokers, for all of the customers formerly serviced by the Defendants. Edwards has more than enough resources and employees to accomplish this task, and has in its possession all customer account statements and account information needed to entice these customers to remain. Edwards' harm will be that it has to compete for its customers' loyalty, rather than being able to place obstacles in the path of the customers' freedom to do business with the brokers and firms of their choice.

By contrast, the issuance of an injunction would have a severe and devastating effect on the Defendants' livelihoods. The Defendants would be unable to contact the customers with whom they have developed strong relationships over the course of their long professional careers, and those customers would be forced to seek financial advisors elsewhere. This will cause the Defendants to lose the majority of their customers and

will cause irreparable harm to their professional careers. In effect, the Defendants would have to begin again in the securities industry, despite the fact that they never bargained for such a restriction.

Issuance of an injunction would cause severe financial impact to the Defendants, while denial of the injunction would barely hinder Edwards, a large financial institution with hundreds of branch offices and thousands of brokers. Accordingly, the balance of hardships mandates a denial of the proposed injunction.

### D.  The Public Interest Weighs Against Granting The Proposed Preliminary Injunction

Edwards' request for injunctive relief is directly contrary to the public interest. If the injunction is granted, non-party customers would be precluded from speaking to the financial advisors who have handled their assets for years, and would be denied the opportunity to properly consider the benefits of moving their assets to Merrill Lynch. The benefit to the investing public in permitting the public to choose the broker of their choice far outweighs the minimal injuries Edwards may suffer if some clients follow the Defendants to Merrill Lynch. Numerous courts across the country agree. See, e.g., Frisby, 163 F. Supp. 2d at 1382 (denying injunction in part because "the inability of a client to consult a trusted advisor for even a single day could result in enormous financial losses to the client" and "[t]his danger outweighs any injury to the Plaintiff that may occur due to the disloyalty of its former employees"); de Liniere, 572 F. Supp. at 249 (noting that "[t]he public has little interest in having its choice restricted to brokers other than the one who has served them, pending the resolution of this dispute"); Plunkett, 8 F. Supp. 2d at 519 (same). Edwards' requested injunction is a heavy-handed attempt to stifle competition. Since the requested injunction would eliminate the customers'

12

freedom of choice and cause potential injuries to innocent non-parties, the public interest militates against granting it.

## IV.  CONCLUSION

For the foregoing reasons, Edwards' request for a preliminary injunction should be denied.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By____/s/ Curtis C. Calloway____
Curtis C. Calloway, #6187134
Winthrop B. Reed, III, #6227062
500 N. Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 444-7765 telephone
(314) 612-7765 facsimile
Attorneys for Defendants

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **DEFENDANTS' PREHEARING MEMORANDUM IN OPPOSITION TO PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION** was served via the electronic filing system for the U.S. District Court, Central District of Illinois, Springfield Division, on this 2nd day of November, 2007, to counsel for the Plaintiff as follows:

Steve J. Rotunno, Esquire
Kubasiak, Fylstra, Thorpe & Rotunno, PC
Two First National Plaza
20 South Clark Street, Suite 2900
Chicago, Illinois 60603
Email: srotunno@kftrlaw.com
Telephone: (312) 630-9600
Facsimile: (312) 630-7939

Joseph E. Gasperetti, Esquire
Paduano & Weintraub LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
Email: jeg@pwlawyers.com
Telephone: (212) 785-9100
Facsimile: (212) 785-9099

Brett K. Gorman, Esquire
Schmiedeskamp, Robertson, New
    & Mitchell, LLP
525 Jersey
Quincy, Illinois 62036
Email: Bgorman@srnm.com
Telephone: (217) 223-3030
Facsimile: (217) 223-1005

                                                                    /s/ Curtis C. Calloway